Filed 10/24/14  P. v. Macias CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALBERT GABRIEL MACIAS,<br><br>    Defendant and Appellant. | B254681<br><br>(Los Angeles County<br>Super. Ct. No. BA415233) |

        APPEAL from a judgment of the Superior Court of Los Angeles County.  Drew E. Edwards, Judge.  Affirmed.

        Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Idan Ivri, Deputy Attorney General, for Plaintiff and Respondent.

_____

# SUMMARY

Albert Gabriel Macias appeals from a judgment entered after the trial court found him guilty of one count of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)).[1] Appellant contends the trial court abused its discretion by failing to treat the conviction as a misdemeanor. We affirm.

# FACT AND PROCEEDINGS BELOW

## I.     Prosecution Evidence

Appellant was a 54-year-old transient who lived near El Sereno Park. Angel Diaz and Guissepe Lopez were volunteer workers at the El Sereno Recreational Center.

Diaz testified that on August 10, 2013, he was sitting on the roots of a tree waiting to start work with Lopez who was sitting to his side. According to Diaz, appellant approached Diaz and Lopez repeatedly stating "Fuck the Raiders" and "Fuck the Raider Nation" and stepped toward Lopez.[2] Diaz testified that although he later told the police that appellant had a knife, at trial Diaz stated that Lopez told Diaz that appellant pulled a knife on him but Diaz did not see a knife. Diaz stated that he was not focused on appellant or Lopez, that he was "shrugging it off" and "didn't think anything of it" and was unsure why appellant was talking "smack" about the Raiders. Lopez told appellant to leave three times and appellant then left.

Diaz and Lopez went into the gym at the recreation center headed to the office. Appellant followed them, saying they were snitches, and Diaz responded that he was not a snitch and almost got into a fight with appellant. Diaz stated he didn't "know what [appellant was] going crazy for."

Lopez testified that on August 10, 2013, he was standing talking to Lopez who was sitting on a tree branch. Lopez did not see appellant approach and did not notice him until he heard appellant saying "Fuck Raider Nation" and came behind Lopez on his left

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] According to Diaz, Lopez remained sitting during the confrontation and appellant remained standing.

rear side. Lopez felt the tip of a knife on the right side of Lopez's torso, just above the belt area. Lopez looked down and saw a knife with a four to five inch blade. According to Lopez he stood still while Diaz confronted appellant and told appellant to put the knife away. Appellant appeared to be intoxicated or on some type of drug.

Lopez tried to calm appellant down and told appellant to leave or walk away two or three times. Diaz was getting "heated" and appeared ready to fight appellant. Appellant walked away, stopped and "exchang[ed] words" with Diaz, and put the knife into his right back pocket and walked away. Lopez was not injured.

After the incident, Diaz and Lopez went into the recreational center's office. Lopez reported the incident to Janett Briones, a park employee, who was in the office. Lopez told Briones what happened, including that appellant put a knife on him and that Diaz and appellant had exchanged words. Appellant then came into the office, "running his mouth" and Diaz had to be restrained by Lopez to keep him from fighting with appellant. Briones asked appellant several times to leave the gym, but he refused.

Another employee suggested Lopez file a police report, which he did later that day. Lopez did not call 911, but reported the incident to police officers who were already at the park.

City of Los Angeles Police Officer Miguel Nunez testified that he was working at El Sereno Park on August 10, 2013. Officer Nunez's partner spoke to Lopez about the incident. Officer Nunez searched the park for evidence but did not find a knife.

On August 17, 2013, Officer Nunez arrested appellant. Appellant did not have a knife on his person at the time of his arrest.

LAPD Detective Maria Arce-Dominguez testified that on August 19, 2013, she was investigating the incident and called Diaz to ask him what happened on August 10. Diaz told Detective Arce-Dominguez that he was at the park when appellant came up to Lopez and placed a knife to his side. Diaz identified appellant as "Gabriel, one of the local transients in the area." Diaz also told Detective Arce-Dominguez that he saw the knife and described it as a regular pocketknife with a string tied to the end of it, and that

3

he was afraid that appellant would injure him with it as well. Detective Arce-Dominguez also spoke to Lopez, who also reported that appellant had approached him with a knife.

## II.     Defense Evidence

Appellant testified that he lived in an empty lot adjacent to the El Sereno Recreational Center. He volunteered at the senior citizen center across the street and also helped local high school baseball players at the park.

Appellant had a history with park employee Guissepe Lopez. Once, appellant walked into the gym and saw that Lopez had his hands on a female employee. Appellant said, "Guissepe, look, that is the second time I saw you do something wrong." Some time before this incident, Lopez drove by appellant and said, "boom, boom, boom, boom." This especially affected appellant because he had been the victim of a drive-by shooting in the past. After this incident, appellant told Lopez, "Okay, I am going to get you. I am going to clown you back. You are not going to like it."

On August 10, 2013, appellant was charging his cellular phone at the park's baseball field and was heading to the recreation center when he saw Lopez and Diaz at a tree. Appellant noticed that Lopez and Diaz were smoking marijuana and methamphetamine from a pipe; they offered the pipe to appellant as he approached, but he declined. Appellant was sober. Appellant became upset that Lopez was smoking because Lopez volunteered as a youth referee and appellant was worried about the children. Appellant began lecturing Lopez about drugs. Lopez became upset about the lecture.

Appellant saw this as his chance to "get . . . back" at Lopez for the jokes Lopez had played on him in the past. Appellant approached Lopez and Diaz from the front and abruptly pulled out his phone. This scared Lopez who asked if appellant was going to call the police. Appellant said, "Look, guys, one call does it all. You want me to call them now? I am going to call." Appellant then told Diaz and Lopez that he was just "pulling your leg" and walked away. Appellant also talked some "sport smack" about the Raiders. Appellant never got behind Lopez and was not carrying a knife.

4

Appellant then went into the gym to get some hot water to make a cup of coffee. Appellant came out of the restroom and saw Lopez and Diaz speaking to Janett Briones. Lopez and Diaz seemed confused and their voices were raised. Appellant believed Lopez and Diaz were worried that appellant would report their drug use, and that they went to the office to complain about him first. Appellant "tried to defuse" the situation. Briones asked appellant to leave, and he said, "No problem. See you in the morning," and left. He was arrested one week later.

Christian Oliva was a Recreation Coordinator at El Sereno Park. Oliva first met appellant when Oliva started working at the park in December 2012. Appellant lived at the park and Oliva had never seen him be physically violent towards anybody. Oliva characterized appellant as a nonviolent person. However, when the police attempted to arrest appellant on August 17, 2013, he was verbally unruly and refused to listen to the officers.

Jennifer Rockwell was also an El Sereno Recreational Center employee. She knew appellant because he had been living at the park, and she never saw him become physically violent with anybody. Rockwell also characterized appellant as a nonviolent person.

Roger Moore was an investigator with the Los Angeles County Public Defender's Office. Moore spoke to Lopez on October 31, 2013, and November 12, 2013, about the incident with appellant. Lopez told Moore that he was walking to the recreation center from school and that he stopped to talk to Diaz by the tree. Appellant approached Lopez and Diaz and yelled, "Fuck the Raiders" while simultaneously pulling a knife from his left rear pocket and placing the tip of the knife against the left side of Lopez's stomach.

III. **Rebuttal Evidence**

Janett Briones testified that on August 10, 2013, she was at the park watching a friend play softball. She went to her office to get a paper when she was approached by Lopez and Diaz. They told Briones that appellant had just pulled a knife on them. Appellant then entered the office as well. In the two to three years that Briones had interacted with appellant prior to that day, she had never had problems with him and

5

believed he was a "very nice man." However, when Briones saw appellant on August 10, he seemed different than usual and very aggravated. Appellant's eyes were bloodshot and he appeared to be under the influence of some substance. He said, "somebody is singing" a couple times before Briones asked him to leave the office.

## IV.    Conviction and Sentencing

Appellant waived his right to a jury trial. On January 17, 2014, the trial court found appellant guilty as charged.

On February 24, 2014, appellant filed a motion under section 17, subdivision (b) seeking to have the trial court declare the offense a misdemeanor. The prosecution opposed the motion.

On February 28, 2014, in bifurcated proceedings, appellant admitted to two of his three alleged prior convictions and the court found the third to be true after a bench trial. The court dismissed two of appellant's three prior strikes for purposes of sentencing. The trial court also denied appellant's section 17, subdivision (b) motion. After hearing argument, the court stated:

"I have read and considered the motion to reduce this matter to a misdemeanor. I have read and considered the opposition. I have heard oral argument.

"On [*sic*] my view this is not minor conduct on behalf of [appellant]. [Appellant] did take a knife out. My recollection is the knife was held at the side of the victim in this case. I don't believe that to be minor conduct. I believe that would be conduct more in line with felony conduct than it is with misdemeanor conduct."

Also on February 28, 2014, the court denied probation and sentenced appellant to a total term of 21 years in state prison; specifically, the trial court sentenced appellant to the midterm of three years in prison, doubled to six years pursuant to the "Three Strikes" law (§ 667, subds. (d) & (e)), and to five additional years for each of his three prior convictions under section 667, subdivision (a)(1). The court also imposed a restitution fine of $300 under section 1202.4, subdivision (b), and a parole revocation fine of $300 under section 1202.45. Appellant received credit for 196 days of actual custody and 196 days of good time/work time credit for a total of 392 days.

6

Appellant timely appealed.

## DISCUSSION

On appeal, appellant contends that the trial court abused its discretion by failing to treat his assault with a deadly weapon conviction as a misdemeanor. In addition, appellant contends that the court's failure to reduce the charge to a misdemeanor violated his federal constitutional right to due process. We affirm.

Assault with a deadly weapon is referred to as a "wobbler" because it is punishable, in the trial court's discretion, by imprisonment in either state prison or county jail. (§ 245, subd. (a)(1); *People v. Park* (2013) 56 Cal.4th 782, 789-790.) "When a crime is punishable, in the discretion of the court, either by imprisonment in the state prison . . . or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes . . . [¶] . . . [¶] (3) When the court grants probation to a defendant without imposition of sentence and at the time of granting probation, or on application of the defendant or probation officer thereafter, the court declares the offense to be a misdemeanor." (§ 17, subd. (b)(3).)

The factors that guide the trial court's discretion in considering whether to reduce a conviction to a misdemeanor are summarized in *People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 978. There, the court held that while the applicability of the Three Strikes law to the defendant's circumstances is relevant, it "is not singularly dispositive" of the issue. (*Id.* at p. 973.) Trial courts retain discretion to determine whether a wobbler should be reduced to a misdemeanor at the time of sentencing. (*Id.* at pp. 974-975.) The relevant factors include, generally, "'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, . . . his traits of character as evidenced by his behavior and demeanor at the trial,'" "the general objectives of sentencing such as those set forth in California Rules of Court, rule [4.]410," and "the offense, the offender, and the public interest," including "public safety considerations" and "the defendant's criminal history." (*Id.* at pp. 978-979.)

The law gives the trial court broad discretion in determining whether to reduce a defendant's conviction from a felony to a misdemeanor. "By making [the charged offense] a wobbler, the Legislature has determined that either a misdemeanor or a felony punishment may be appropriate in the discretion of the sentencing court. The Legislature has also granted broad authority under the express terms of section 17(b) to make that determination. And, the Legislature chose not to compromise the exercise of the court's discretion when it enacted the three strikes law. [Citation.]" (*People v. Superior Court (Alvarez)*, *supra*, 14 Cal.4th at pp. 980-981.) The burden of demonstrating an abuse of discretion—that the sentencing decision was arbitrary or irrational—is on the party challenging the sentence imposed by the court. (*Id.* at p. 977.) "'In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' [Citation.]" (*Id.* at pp. 977-978.) A "'decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." [Citations.]'" (*Id.* at p. 978.)

Here, appellant has not met his burden in this case. Appellant argues that it was unreasonable for the trial court to base its determination on its "short description of the crime alone," but a review of the transcript shows that the trial court's comments were in response to a specific argument from counsel about the current offense and appellant's conduct. Moreover, the court's statements indicate that it had reviewed and considered appellant's motion and counsel's argument as well as the opposition, suggesting the court's denial was based upon consideration of additional relevant factors.

Nothing in the record indicates that in reaching its sentencing determination the trial court strayed beyond the factors that are appropriate or that the sentence was otherwise arbitrary or irrational.

Because we find the trial court did not abuse its discretion by declining to treat appellant's conviction for assault with a deadly weapon as a misdemeanor, we reject appellant's claim that the felony sentencing violated his federal due process rights.

**DISPOSITION**

The judgment is affirmed.


CHANEY, J.


We concur:


ROTHSCHILD, P. J.


MILLER, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.